EUSEBIO SÁNCHEZ ET AL., Plaintiffs and Appellants, *v.* MUNICIPALITY OF CAYEY, Defendant and Appellee. MUNICIPALITY OF CAYEY, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, GUAYAMA PART, EUGENIO VELÁZQUEZ MARTÍN, JUDGE, Respondent; PEDRO REYES ET AL., Interveners.

Nos. R-66-118; C-66-49. Decided February 24, 1967.

90

*Francisco Torres Aguiar* for the Municipality of Cayey. *A. J. Amadeo Murga* for interveners. *Frank Torres* for appellants.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Both petitions involve claims for wages filed by employees of the Municipality of Cayey against said municipality. They claim unpaid wages for overtime, work in excess of eight hours daily and forty-eight hours weekly, work performed on holidays and on the seventh day, work during lunch time, and vacations. In petition No. R-66-118 the claim covers a period from the year 1941 until the filing of the complaint on March 20, 1964. In C-66-49, from March 1, 1955. In the former, the Guayama Part dismissed the complaint as a question of law, on the ground that the municipalities are not within the ambit of labor legislation. In the latter, the Guayama Part, as a question of law, also dismissed the defense of the municipality to the effect that it is excluded from liability for this kind of claims under the labor law in force. Both petitions are filed by employees in the same activity.

We shall first consider a certain question concerning our jurisdiction which is raised in petition No. R-66-118. The claimants allege in this petition that on all the dates mentioned in the complaint, the Municipality of Cayey was the owner, proprietor, or had the control or administration of a hydroelectric power plant or central which it operates and has been operating for lucrative purposes, devoted to produce and create electric power which has been furnished by said

municipality to the inhabitants of Cayey, in the urban 'and rural zones, and to the public in general, upon monetary payment by said consumers for light or electric power used by the latter.

Defendant municipality answered the complaint and raised as first defense that it did not state a claim which would permit the granting of a remedy, because the municipalities are expressly excluded from liability for wage claims like those herein involved, pursuant to Act No. 379 of 1948 and Act No. 96 of 1956. It also invoked prescription as defense. On motion of the municipality, the court held a hearing to consider previously the defense of lack of cause of action, and without any evidence having been presented at said hearing, it entered an order on November 5, 1964 dismissing the complaint. The court stated:

"ORDER—These are certain claims which fall within the ambit of the labor laws. This legislation is contained in Title 29 of the *Laws of Puerto Rico Annotated.* This legislation expressly excludes the municipalities from the application thereof. To that effect see 29 *L.P.R.A.* 63(2) and (11), 29 *L.P.R.A.* 246(e)(3), and 29 *L.P.R.A.* 285 with their corresponding annotations. For the reasons stated the complaint is dismissed."

The preceding order of dismissal was notified to the claimants on November 6, 1964.

On the 18th of November the claimants filed a motion for reconsideration. On the 24th of November the reconsideration was denied without it having been filed in record. However, the order of denial was not notified until December 11, 1964, after the term of 30 days for review counted from the date the notice of the order had elapsed.

On December 21, 1964 the claimants filed a second motion for reconsideration and requested a hearing or, in the alternative, that the court render judgment dismissing the complaint in order that they could appeal to the Supreme Court. There is evidence in the record that the judge who entered

the order instructed the office of the clerk to leave the second motion for reconsideration pending until he returned from his vacation.

On February 1, 1965 no action having been taken as to the preceding motion, the claimants filed a motion to set aside the order, invoking Rule 49 of the Rules of Civil Procedure. On February 2, 1965 the court rendered judgment in the following terms:

"JUDGMENT—In the above-entitled case this court, speaking through the undersigned judge, entered an order on November 5, 1964 by virtue of which he dismissed the complaint. A motion for reconsideration was presented which was denied on November 24, 1964. A second so-called motion for reconsideration was filed on December 16, 1964 requesting that a public hearing be granted to discuss and decide questions of constitutional order, or that, in alternative, the court render judgment dismissing the complaint. The court grants the second alternative and for the same reasons set forth in the order of November 5, 1964, which is attached to this judgment for such purposes, judgment is rendered dismissing the complaint."

This judgment appears as registered and notified on February 16, 1965.

On May 17, 1965 the court also entered the following order in writing, which was notified to the parties on May 19:

"ORDER—The motion To Set Aside the Order having been set for today, plaintiffs appeared represented by their attorney, Frank Torres. Defendant did not appear, there existing in the record a motion submitting said motion To Set Aside the Order.

"Plaintiffs having argued said motion, the court ratifies its order of February 2, 1965 dismissing the complaint, and in the exercise of its discretion it grants plaintiffs a term of 10 days to amend their complaint.

"In the event the amended complaint is not filed within the term granted, an additional term of 10 days is granted to said plaintiffs.

"Let it be notified.

"Guayama, Puerto Rico, May 7, 1965. Rendered in open court on April 28, 1965 and reproduced today, May 17, 1965."

On May 6, 1965 an amended complaint had been filed under the order entered in open court on April 28, 1965. The fundamental allegations were not altered. Defendant municipality requested the elimination of the amended complaint, and on May 3, 1966 the court entered the following order:

"ORDER—Having examined the briefs of the parties and having considered their actions, the court believes it is proper to dismiss, as it hereby dismisses, the amended complaint. Thus, the undersigned judge considers this case closed.

"Let it be registered and notified."

This order was registered and notified to claimants on May 3, 1966. On May 11, 1966 a petition for review was filed which we consider now. Up to here the record of the case in first instance.

Appellee municipality moved for the dismissal of the petition because of lack of jurisdiction of this Court. Its position before us is that the decision rendered in this case was final and unappealable after the lapse of 30 days since November 6, 1964 when the first order entered dismissing the complaint was notified, and the first motion for reconsideration was flatly denied; and that any subsequent order of the trial court, including the last order of May 3, 1966 from which the appeal is taken, was also entered without jurisdiction.

On June 16, 1966 we entered a "motion denied" to the dismissal sought by appellee. On November 2, 1966 we issued the writ of review. In its brief on the merits the municipality insists on our lack of jurisdiction. This being a question involving the very organic power of this Court of second and last instance in Puerto Rico to entertain a particular judicial question and decide it, in view of the situation revealed by the record, and our order of June 16 afore-

mentioned not having been grounded, it seems advisable to make a brief ulterior exposition of the jurisdictional contention.

When or at what moment has a *final judgment* been rendered by the court of first instance is a fact which should appear in every record with crystal clearness and undisputably, because it is on that fact that the jurisdiction of this Court rests or its power at law to entertain and decide in last instance a particular question in issue on appeal or review. Act No. 115 of June 26, 1958; Rule 53.1 of the Rules of Civil Procedure of 1958.

■ It is frequently observed that decisions of judges of first instance which are intended to put an end to a controversy in that instance are issued under the title of "order." It is true that Rule 44.1 provides that the term "judgment" includes a decree and any order from which an appeal may be taken, but that has nothing to do with the problem of the proper clarity and certainty in the record for the purpose of the jurisdiction of this Court. In order that the term, within which our jurisdiction is effective in civil cases on appeal and review, begin to extinguish, the formal *act* of the entry in the record of a copy of the notice of the final judgment is required. Act No. 115, Rule 53.1(a), (b); Rule 65.3. See *Figueroa* v. *Superior Court*, 85 P.R.R. 77 (1962).[1]

[1] Rule 53.1(a).—"An appeal is perfected by filing . . . within thirty (30) days after *the entry* of a copy of the notice of judgment."

Rule 53.1(b).—"A review is perfected by filing . . . within thirty (30) days after *the entry* of a copy of the notice of judgment. . . ."

Rule 65.3.—"Immediately upon *the entry* of copy of an order or judgment, the clerk shall serve a notice by mail [*of said entry*] . . . upon every party affected thereby. . . ."

Act No. 115, 1958.—(a) ". . . *final judgments* rendered by the Superior Court . . . shall be appealable to the Supreme Court." (b) "Any other *final judgment* of the Superior Court may . . . be reviewable by the Supreme Court." Section 2.

■ To label a judgment, which aims to put an end to the litigation in first instance, an order, creates confusion among the litigants and the officials of the court themselves. Notwithstanding Rule 44.1, the term "order" has the familiar classic connotation of an interlocutory decision, except when it is entered in incidents subsequent to a final judgment. It tends to confuse the officials because ordinarily "orders" are notified by them more informally and without complying with the more exacting requirements for the notice of final judgments, on the strict compliance with which, depends our jurisdiction.

■ It should be a good rule that when a motion to dismiss is sustained, which in the opinion of the judge puts an end to the litigation in that instance, the judge should set forth that, since the complaint is not susceptible to amendment, he proceeds to render judgment dismissing it. Notice of said judgment having been served with the formalities indicated, the effective term of our jurisdiction becomes clear. If the judge believes that the complaint is amendable, or at that time he is not completely sure that the action could not prosper under any modality in sustaining the motion to dismiss, he should grant the party a term to amend the complaint if it were susceptible to amendment and if he so desires. If the litigant does not desire it or understands that it is impossible to amend, he should affirmatively request that final judgment be rendered on the motion to dismiss, dismissing the complaint. Said judgment having been rendered and notified with the proper legal formality, our jurisdiction also appears clear in the record.

In this petition the situation is very confusing as to permitting us to determine with full certainty the time when final judgment was rendered insofar as our jurisdiction is concerned. (1) Although the "order" of November 5, 1964 was notified on the sixth and a motion for reconsideration timely requested was not filed in the record, the order of

November 24 denying it was notified on December 11, that is, subsequent to the term of 30 days as of November 6. (2) Appellee is right in the sense that after the lapse of 15 days the proceeding does not authorize second motions for reconsideration. However, the court considered the second motion for reconsideration as a petition for final judgment, and on February 2, 1965 it proceeded to render said judgment. Notice having been served on February 16, it could have been final on March 18. (3) Notwithstanding, the court apparently registered the motion to dismiss under Rule 49, since on April 28, 1965 orally, and in writing on May 17, it entered an order ratifying "its order of February 2, 1965, dismissing the complaint," but in the exercise of its discretion, it granted the claimants terms to present amended complaints. (4) Finally, also by "order," it dismissed the amended complaint, although it did not render judgment dismissing the suit. Appellants considered this action as a final judgment and came here on review.

■ Even if the only judgment rendered in this case were final since March 18, 1965, the subsequent orders of April 28 and May 3 may be considered as entered subsequent to the final judgment, and in that case we would consider the issuance of the writ for review as the issuance of a writ for certiorari against said orders. We reaffirm our decision of June 16, 1966 refusing to dismiss the petition for lack of jurisdiction.

On the merits of both petitions: Appellants claim wages from 1941 to 1964 in R-66-118 and from 1955 in C-66-49. They do not invoke any mandatory decree promulgated under the Minimum Wage Act No. 8 of April 5, 1941. So that up to May 15, 1948, should the first appellants have any right to claim, it would be by virtue of Act No. 49 of August 7, 1935, regulating the working hours in commercial, industrial establishments "and in other lucrative businesses," and of Act No. 110 of May 13, 1937, as subsequently amended;

and of the provisions of Act No. 289 of April 9, 1946.

Act No. 379 went into effect on May 15, 1948, establishing the working day in Puerto Rico, etc. Its § 16 reads, in part, as follows:

"The provisions of this Act shall not apply to the employees of the Insular Government, of the municipal governments, of the Government of the Capital, or of the agencies or instrumentalities of said governments, excepting such agencies and instrumentalities as are devoted to agricultural, industrial, commercial or public service enterprises."

■ Appellants maintain that even though pursuant to that provision the wage claims against the municipalities did not lie, said provision cannot have the effect of destroying their right to claim against the appellee, which right was acquired and accrued prior to the effectiveness of said provision. Appellants are correct. There is nothing in Act No. 379 to indicate a legislative intent to such effect. On the contrary, Act No. 49 of August 7, 1935 remained in full force and effect by virtue of Act No. 8 of April 5, 1941 and was in force until May 15, 1948, on which date Act No. 379 went into effect. This Act, on its part, left in force Act No. 110 of May 13, 1937, as subsequently amended, and Act No. 289 of April 9, 1946. But this is of no use to appellants because their right to claim wages for any period prior to March 20, 1954 is nonexistent pursuant to the provision of § 32(b) of Act No. 96 of June 26, 1956.[2]

■ As to the period subsequent to March 20, 1954 and March 1, 1955, in relation to the matter governed by Act No. 379, the provision copied above should be read together with other provisions of said statute, and in the light

---

[2] Section 32(b).—"Where the employee is working with the employer, the claim shall include only the wages to which the employee may be entitled, *on any score,* during the last ten years immediately preceding the date on which he may institute the judicial action."

According to the complaint the employees are still on their jobs.

of a general public policy contemporaneous with its approval. The provision itself covers under the Act those governmental agencies or instrumentalities which are engaged in agricultural, industrial, commercial, or *public service* enterprises. A municipality is an agency of the State Government and an activity by virtue of which electric power is produced and furnished to the consumers upon payment, subject to a schedule of charges, ordinarily may be considered as a public service activity or enterprise. In § 19 the Act defines "establishment" as including "every building, house, factory, shop . . . warehouse, office, *public service* enterprise, place and site where work is executed, labor done, or any service rendered for pay." The complaint alleges facts which we must consider as true for the purpose of the dismissal decreed, that appellee possesses and operates a hydroelectric power plant for lucrative purposes and that it supplies electric power upon payment to the public in general.

 The court and the appellee invoke the Minimum Wage Act, Act No. 96 of 1956, § 33(a)(3) to the effect that its provisions are not applicable to persons employed by the Government of the Capital or by municipal governments. Act No. 96 does not come into play in this case. Unlike Act No. 8 of 1941, which covered minimum wages and working conditions, Act No. 96 of 1956 provides only as to minimum wages. There is no claim for minimum wages in this action and, as we pointed out at the beginning, neither do they invoke any rights under mandatory decrees promulgated pursuant to the Act of 1941, which decrees still subsist.

 It must be clear that on this occasion we do not anticipate an opinion on the merits of the cases in one sense or another. The law has been analyzed to show that it was not possible to dismiss this suit with the cutting expression that every claim within the ambit of labor law is improper, as a bare question of law, against a municipality, nor to

dismiss the defense of the right of the municipality—C-66-49 —on the basis of a contrary view. Prior to dismissing the complaint or the defense of the municipality, the situation requires evidence as to a series of facts and elements arising from Act No. 379 itself, and the laws previously referred to related to the operation by the appellee of said hydroelectric plant as a possible public service enterprise, whether or not for profitable or lucrative purposes, and how said activity or function of the Municipality of Cayey is integrated or related to others strictly governmental, to which Act No. 379 and the others aforementioned might not be applicable. The question of law raised should be decided preferably in a hearing for both cases, and evidence should be presented on the aforementioned elements and any others pertinent and necessary for the proper adjudication of the controversy.

For the reasons stated, the decisions appealed from will be reversed and the record remanded to the trial court for further proceedings compatible with this opinion.

Mr. Justice Hernández Matos did not participate in the consideration and decision of appeal R-66-118.